195 So.2d 353 (1967)
Bernice B. SCOTT, Individually and as Ad ministratrix for the Estate of her Minor Daughter, Glenda Scott
v.
BOH BROS. CONSTRUCTION CO., and Travelers Insurance Company.
No. 2492.
Court of Appeal of Louisiana, Fourth Circuit.
February 13, 1967.
*354 Racivitch, Johnson, Wegmann & Mouledoux, Salvatore Panzeca, New Orleans, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Thomas G. Rapier, New Orleans, for defendant-appellees.
Before McBRIDE, CHASEZ, and JANVIER, JJ.
JANVIER, Judge.
Plaintiff brings this action in her own behalf and that of her minor daughter for damages sustained as a result of an accident on June 3, 1963.
For the first time in this court, by brief alone, Defendant contends Plaintiff's cause of action is prescribed since Plaintiff did not qualify as administratrix of the estate of her minor daughter nor as tutrix of the child until more than two years after the accident. Although according to LSA-C.C.P. art. 2163 a plea of prescription may be filed for the first time in an appellate court if pleaded prior to the submission of the case, it must be specially presented by a pleading and not by brief alone. In the instant case because no formal plea of prescription was filed in this court, we can not consider the exception. Chase v. Davis, 20 La.Ann. 201; City of New Orleans v. Di Benedetto, La.App., 144 So.2d 558. See also Merchants Adjustment Bureau v. Malta, 102 So.2d 781 and the cases cited therein.
We will now consider the merits. The accident occurred when Plaintiff's daughter, aged six, fell while playing on top of a large drainage pipe on the North Claiborne Avenue neutral ground, breaking her left leg. Defendants are Boh Bros. Construction Company and its insurer, Travelers Insurance Company. It is undisputed that Boh Bros. was installing the pipes which were lying on four or five blocks of the North Claiborne Avenue neutral ground; that there were no warnings or barricades except those warning pedestrians of holes in the neutral ground; that the pipes were unfenced; and that there was a watchman on duty from 3:00 p. m. until 11:00 p. m., Monday through Saturday, and that part of his job was to attempt to prevent children from playing on the pipes.
These pipes were heavy, weighing between a ton and a half and two tons, and were large, eight feet long and 24 inches in diameter. There is no allegation that the pipe on which Plaintiff's daughter was playing either rolled or tilted causing her fall.
Plaintiff urges two theories of recovery: (1) a general negligence theory under LSA-C.C. arts. 2315 and 2316 and (2) the attractive nuisance doctrine. With regard to negligence, Boh Bros.' pipe foreman testified the company's method of operation was the usual one on such jobs, and that it was common practice to line the pipes along the area in which they were to be installed. He further testified it would have been impractical to barricade or fence them in one place. It is a matter of record that these pipes were used daily and Defendants' counsel pointed out in oral argument that in order to get to the pipes, the fence would have to be partially torn down and, of course, rebuilt every day. Nor was it practical, according to the foreman, to take the pipes away every night and bring them back in the morning. This conclusion is logical *355 because of the pipes' large size and heavy weight and the attendant difficulty of transporting them.
The leaving of building materials at a construction site in a public place does not of itself constitute negligence. In Genovese v. New Orleans Public Service, La. App., 45 So.2d 642, rail spikes were left on a street by New Orleans Public Service and one of the children who was playing in the area was hit in the eye by another child with one of the spikes. This court held the defendant could not be held liable under a theory of negligence because the rail spikes themselves had no peculiarly dangerous characteristics. In Jackson v. Jones, 224 La. 403, 69 So.2d 729, there is dicta to the effect that the leaving of building material, not inherently dangerous, unguarded at a construction site where children play, is not an act of negligence. In the cited case the contractor who left a pile of lumber in a school yard was held to be negligent but only because the lumber pile contained protruding nails, the court stating:
"Of course, if this pile of lumber provided no great hazard to the safety of the children because it was stacked evenly, was only two feet high and did not contain protruding nails, as found by the district judge in the Court of Appeal, there would not be any liability as it is essential, in this type of case (like those following under the attractive nuisance doctrine), that the offending object be not only tempting and inviting to the child but it must also be inherently dangerous for him to climb or play on." 69 So.2d at 731. (Emphasis added.)
In the instant case, because of their height (only two feet) and the fact that machinery was necessary to move them, the pipes were less dangerous than most building materials at construction sites. Therefore we do not find Defendant committed any act nor was guilty of any omission which would constitute fault under LSA-C.C. arts. 2315 and 2316.
With regard to the attractive nuisance doctrine, Plaintiff cites the following requisites for the application of that doctrine as set forth in Saxton v. Plum Orchards, 215 La. 378, 40 So.2d 791:
"1. That the injured child was too young to understand and avoid the danger.
"2. That there was reason to anticipate the presence of such children, either because of some attraction on the premises, or because the danger was in some place where children had a right to be.
"3. That there was a strong likelihood of accident.
"4. That the danger was one other than those ordinarily encountered.
"5. That the precautions not taken were such as a reasonably prudent person would have taken under the circumstances." 40 So.2d at 795.
Of these tests we find that only the second was met; children did frequent the area. With regard to the first test, the trial judge concluded that Plaintiff's child was aware of the danger of falling. The last three requisites have definitely not been met. There was no strong likelihood of an accident because these were large, stationary pipes which could not roll or tilt and, as Defendants pointed out in oral argument, were comparable to concrete mounds. It follows that because of the nature of the pipes, they presented no extraordinary danger and that there was no duty to take special precautions.
Moreover, Defendants correctly contend there is another essential necessary to constitute an attractive nuisanceit must have a hidden trap. Although in the Saxton case it was not specifically stated that there must be a hidden trap, there is language to the effect that the pond, which was held to be an attractive nuisance, was inherently dangerous and did have a nonapparent characteristic which made it, in effect, *356 a trap. The Supreme Court described this characteristic as follows:
"That the pool was unusually dangerous and that there was a strong likelihood of an accident cannot be denied. Its banks did not slope graduallythey were abrupt, vertical; and immediately beside them the water had a depth of at least four feet." 40 So.2d at 796.
Furthermore, this court has held, since the Saxton decision, that in order to constitute an attractive nuisance an object must contain a hidden trap. Martin v. Sessum Service Corp., 174 So.2d 180; Juhas v. American Casualty Company of Reading, Pa., 140 So. 2d 676; Genovese v. New Orleans Public Service, supra.
Plaintiff also cites Salter v. Zoder, 216 La. 769, 44 So.2d 862, in which a defendant was held liable when a child fell from a stack of lumber in his driveway. However, in the cited case, this lumber was covered with a galvanized iron sheet extending beyond the edges on all sides and it was the metal sheeting which caused the injury, a laceration of the cheek.
Our jurisprudence is to the effect that when a child falls from something not inherently dangerous and which contains no hidden trap, there can be no application of the attractive nuisance doctrine. The reason for this was well expressed by the Supreme Court in Tomlinson v. Vicksburg S. & P. Ry. Co., 143 La. 641, 79 So. 174, in which a child, who was playing on a pile of crossties, dislodged one causing it to fall upon another child's leg. In rejecting the attractive nuisance doctrine the court said:
"Almost any object that a little child can climb or play upon is tempting or inviting to him, and almost any such object that is not intended for a child to climb or play upon is dangerous for him to climb or play upon. If a pile of cross-ties is so obviously inviting as a plaything for children that it is negligence, per se, for the owner of the premises not to observe and guard against the danger of such temptation, what should we say of any wood pile or lumber stack, a ladder, fruit tree, or any other object not less tempting to children, nor less dangerous for them to climb or play upon, than is a pile of cross-ties?" 79 So. at 175.
This same principle was followed by this court in Juhas v. American Casualty Company of Reading, Pa., supra (recovery denied for child who fell from inverted baptismal tank); Martin v. Sessum Service Corp., supra (recovery denied for a child playing on window sill of house under construction).
In his reasons for judgment, the trial judge stated succinctly why the attractive nuisance doctrine is not applicable here:
"`The fact that a thing is attractive to children is not of itself a ground for invoking the attractive nuisance doctrine. Clearly, not everything which may possibly excite the curiosity of a child amounts to an attractive nuisance. If everything containing some element of danger to a boy, of which a plaything possibly can be made by him, amounts to an attractive nuisance, there is almost no limit to the application of the doctrine.... The tendency of the courts is to exclude from the application of the attractive nuisance doctrine things not in their nature dangerous or peculiarly alluring or attractive to children, natural conditions, common or ordinary objects such as walls, fences, and gates, simple tools and appliances, and conditions arising from the ordinary conduct of a business." American Jurisprudence, Volume 38, Verbo Negligence Section 149, pages 815-16.
"In the instant case, these pipes were in no way inherently dangerous; they were large and incapable of moving unless done so by heavy equipment so as to be considered analogous to a wall or a fence."
He also concluded, as do we, that there was no showing of actionable negligence on the part of Boh Bros. Construction Company.
*357 For the above reasons the judgment appealed from is affirmed; Plaintiff to pay all costs in both courts.
Judgment affirmed.